UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL KRASNANSKY, *on behalf of himself, FLSA Collective Plaintiffs, and the Class*,

                Plaintiff,

v.

JCCA f/k/a JEWISH CHILDCARE ASSOCIATION,

                Defendant.

No. 22-CV-6577 (KMK)

OPINION & ORDER

---

Appearances:

Adam K. Brody, Esq.
Jeffrey D. Pollack, Esq.
Mintz & Gold LLP
New York, NY
*Counsel for Plaintiff*

Alexander Deutsch, Esq.
Jason A. Zoldessy, Esq.
Jackson Lewis P.C.
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

      Michael Krasnansky ("Plaintiff") brought this putative class action against his former employer, JCCA ("JCCA" or "Defendant"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), § 190 *et seq.* (*See generally* Compl. (Dkt. No. 6).)  The Parties now seek approval of their proposed settlement (the "Settlement Agreement" or "SA").  (Joint Mot. for Approval of FLSA Settlement ("Mot.") Ex. A ("SA") (Dkt. Nos. 27, 27-1).).  For the reasons that follow, the Parties' Application is granted.

I.  Background

A.  Factual Background

Plaintiff is a resident of Putnam County, New York who worked as a "Fleet Administrator" at the Westchester Campus of the JCCA, which "provides comprehensive care to children, young people, and families." (Compl ¶¶ 5–6, 37–38.) Plaintiff worked at the JCCA from September 4, 2018, until his termination on March 3, 2022. (*Id*. ¶¶ 37, 39.)[1]

Plaintiff has asserted various wage and hour violations, based primarily in Defendant's practice of unlawful "time shaving." (*See, e.g.*, *id*. ¶ 45.) Specifically, Plaintiff alleges that "Defendant automatically shaved one (1) hour per shift from employees' hours worked based on purported meal breaks . . . , however, Plaintiff and all other employees were not able to take their full meal breaks and were routinely required to work through their lunch breaks." (*Id*. ¶¶ 45–46.) Due to this practice, Plaintiff alleges that "Defendant categorically reduced its employees' compensable hours every week" and Plaintiff was not paid compensation for all hours worked. (*Id*. ¶¶ 48–50.) Plaintiff also alleges that he was paid a flat weekly salary of less than $1,000 per week regardless of hours worked, which was less than the minimum salary required under New York Law for an employee to be exempt from overtime requirements. (*Id*. ¶¶ 41–43.) Accordingly, Plaintiff alleges that Defendant knowingly and willfully: (i) failed to pay a lawful minimum wage and overtime compensation in violation of the FLSA and NYLL, (*id*. ¶¶ 41–43, 50, 54–55, 60–78); and (ii) violated various provisions of the NYLL by failing to provide regular wage statements and related notices, (*id*. ¶¶ 57–58, 76–77). Accordingly, Plaintiff has sought to recover unpaid wages, unpaid overtime compensation, and other damages. (*Id*. at 11–12.) He also has sought liquidated damages, pre- and post-judgment interest, and attorney fees and costs.

---

[1] Plaintiff alleges that his "employment was wrongfully terminated." (Compl. ¶ 40.)

(*Id.*)  Finally, Plaintiff purported to bring his claims individually and on behalf of a class of "all non-exempt employees, (including but not limited to Residential Workers, Facilities Employees, Safety Workers, Social Workers, Support Staff, Per Diem Staff, and Administrators) employed by Defendant" six years prior to the filing of the Complaint.  (*Id*. ¶¶ 12–36.)

    B.  Procedural History

Plaintiff filed this Action on August 2, 2022.  (*See generally* Compl. (Dkt. No. 1).)[2]  On September 21, 2022, after requesting and receiving an extension from the Court, Defendant filed its Answer.  (*See* Dkt. No. 14.)  The Parties submitted a proposed case management plan on November 28, 2022.  (*See* Dkt. No. 17.)  The Court held a conference on November 29, 2022, where it approved the case management plan and referred the Parties to Mediation and Magistrate Judge Judith McCarthy for further proceedings.  (*See* Dkt. (minute entry for November 29, 2022), Dkt. Nos. 18–20.)

On January 24, 2022, the Parties submitted a joint letter motion to adjourn a conference before Judge McCarthy, reporting that they reached an agreement in principle during a mediation session on the same day.  (*See* Letter from Jason A. Zoldessy to Court (Jan. 24, 2023) (Dkt. No. 23).)  The Court entered an order of dismissal without prejudice, providing the Parties with the right to reopen the Action within 30 Days of the Order if the settlement is not consummated.  (*See* Dkt. No. 26.)  On March 7, 2023, the Parties submitted their settlement papers for the Court's approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  (*See* Mot.; SA.)  After a request by the Court, (*see* Dkt. No. 28), the Parties filed

---

[2] Plaintiff refiled his Complaint the following day to account for a filing error.  (*See* Dkt. Nos. 1, 6.)

supplemental briefing regarding their settlement papers, (*see* Joint Ltr. from Parties to Court ("Supp.") (Dkt. No. 29)).

## II.  Discussion

### A.  Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute."  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  *See* Fed. R. Civ. P. 41(a)(2).  The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Cheeks*, 796 F.3d at 206.  Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015) (citation omitted); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same); *Briggs v. DPV Transportation, Inc.*, No. 21-CV-6738, 2021 WL 6111917, at *2 (S.D.N.Y. Dec. 27, 2021) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4

(S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (citation omitted); *see also Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same); *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (same).  Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (citation and quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Jambox*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Personal Touch Moving, Inc.*, No. 13-CV-

5

8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (citation and quotation marks omitted).[3]

To this end, courts require information surrounding

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 176).

### B.  Analysis

#### 1.  Whether Settlement Amount is Fair and Reasonable

Under the SA, Defendant agreed to pay $15,000 (the "Settlement Amount") to resolve Plaintiff's claims.  (SA ¶ 1; Mot. 4.)  Of the Settlement Amount, Plaintiff will receive $4,495.00 in full satisfaction of his FLSA and NYLL claims for wages and overtime, as well as an additional $5,000 in full satisfaction of Plaintiff's liquidated damages, penalties, and interest, for a total award of $9,495.00.  (SA ¶¶ 1(b)–(c); *see also* Mot. 4.)  In addition, $5,000.00 will go to Plaintiff's counsel for attorneys' fees, and $505.00 will go for reimbursement costs.  (SA ¶ 1(a); Mot. 4.)  Thus, Plaintiff's net settlement—after the deduction of attorney fees and costs—is $9,495.00.[4]

---

[3] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (citation and alteration omitted).

[4] Courts evaluate the fairness of a plaintiff's recovery after deducting attorney fees and costs.  *See Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2020 WL 5898956, at *3 (S.D.N.Y. Oct. 5, 2020); *Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020); *Garcia v. Cloister Apt Corp.*, No. 16-CV-5542, 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019).

In the instant Motion, the Parties jointly estimate that in Plaintiff's "best-case scenario," he is owed approximately $30,000, which includes unpaid wages and overtime compensation, as well as liquidated damages at 100% of damages. (Mot. 4.) After a request from the Court, the Parties provided a more fulsome breakdown of the estimated damages, stating that Plaintiff is owed approximately $10,355.03 in overtime compensation, $10,355.03 in liquidated damages, and $10,000 in damages under the Wage Theft Prevention Act. (Supp. Ex. A at 3.) According to this calculation, Plaintiff's best possible recovery amounts to approximately $30,710.05. (*Id*.) A net recovery of $9,495.00 would represent 31% of Plaintiff's total alleged damages. The Parties also note that, if Plaintiff chose to move forward instead of settling, Plaintiff understands that "any settlement would be less than what he could be awarded if he could win at trial," but recognizes that there were "valid factual disputes concerning the hours worked by the Plaintiff and the sufficiency of the wages he was paid." (Mot. at 4.) The Court finds that, given these risks, the settlement amount is reasonable. *See Pascual v. Three Diamond Diner Corp.*, No. 21-CV-3333, 2023 WL 1518513, at *3 (S.D.N.Y. Feb. 3, 2023) (approving settlement representing 29% of the plaintiffs' total damages); *Redwood v. Cassway Contracting Corp.*, No. 16-CV-3502, 2017 WL 4764486, at *2 (S.D.N.Y. Oct. 18, 2017) (holding that net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Rodriguez-Hernandez v. K Bread & Co.*, No. 15-CV-6848, 2017 WL 2266874, at *4–5 (S.D.N.Y. May 23, 2017) (approving settlement sum representing 26% of potential damages as reasonable).

### 2. Good Faith

The Court is satisfied that the Settlement Agreement was negotiated competently, in good faith, at arm's length, and that there was no fraud or collusion. (*See* Mot. 5 (noting that the settlement was reached "as a result of repeated arm's length negotiations, between counsel who are well versed in the prosecution and defense of wage and hour collective actions, and as a result of Court-ordered mediation").) *See also Aponte v. Comprehensive Health Mgmt, Inc.*, No. 10-CV-4825, 2013 WL 1364147, at *3 (S.D.N.Y. Apr. 2, 2013) ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved meets the requirements of due process." (collecting cases)).

### 3. Similarly Situated Plaintiffs

The Court is not aware of other employees who are similarly situated to Plaintiff, and Plaintiff will be the only employee affected by the settlement and dismissal of the lawsuit. These facts weigh in favor of approval of the SA. *See Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816, 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (noting that no other employee came forward and that the plaintiff would "be the only employee affected by the settlement and dismissal," and that these facts supported approval of the proposed settlement); *Penafiel*, 2015 WL 7736551, at *2 (noting that the fact that "[n]o other employee ha[d] come forward" supported settlement approval).[5]

### 4. Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would

---

[5] The Parties also never sought collective action certification based on the allegations in the original Complaint, so there are no unrepresented Plaintiffs. (*See generally* Dkt.)

8

"waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id*. at 206 (quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues"). To that end, releases must generally be limited to wage and hour issues, *see Cheeks*, 796 F.3d at 206, and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation and quotation marks omitted).

    Here, the Settlement Agreement release provides in relevant part that "Plaintiff . . . voluntarily release[s] and forever discharge[s] Defendant . . . of and from any wage and hour actions . . . and all wage and hour claims asserted or that could have been asserted in the Lawsuit

9

. . . whether known or unknown . . . arising from any purported wage and hour violation and based upon any conduct occurring from the beginning of time up to and including the date of Plaintiff's execution of this Agreement." (SA ¶ 3.) The Settlement Agreement also states that the "Parties acknowledge that this Agreement does not limit either party's right, where applicable, to file or participate in an investigative proceeding of any federal, state[,] or local governmental agency . . . [and] Plaintiff agrees that if such administrative claim is made, Plaintiff shall not be entitled to recover any individual monetary relief or other individual remedies." (*Id.* ¶ 4.)

"[W]hile broad, the terms of the release . . . relate[] specifically to wage and hour issues without encompassing, for example, prospective discrimination claims." *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017); *see also Diaz v. Rockland Gardens Assocs.*, No. 22-CV-3281, 2023 WL 1517888, at *4 (S.D.N.Y. Feb. 3, 2023) (citing *Pucciarelli*); *cf. Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (rejecting proposed settlement releasing "any and all FLSA claims and NYLL claims of any kind or nature"). Therefore, the Court approves the release.

     5. Attorney Fees

Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorney fees. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)). Although courts may elect to award fees by considering either the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa*

*U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records.").  A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181.  The Court must also determine the reasonableness of the hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

      Here, Plaintiffs' counsel seeks an award of $5,000 in attorneys' fees, (Mot. 4; SA ¶ 1(a)), which is approximately 33% of the Settlement Amount.  Plaintiff's counsel also submitted records detailing the billable hours and expenses counsel and staff undertook as part of this settlement, totaling over $53,000.  (*See* Mot. Ex. B at 8 (Dkt. No. 27-2).)  After review of the records, the Court finds that these records meet the above-mentioned standard set forth in this Circuit: "billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Wolinsky*, 900 F. Supp. at 336 (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).

      Based on the billing records, counsel expended a significant amount of time and resources—namely one attorney did almost 60 hours of work, and another attorney did almost 30 hours of work. (*See* Mot. Ex. B. at 8.)  To that point, "[t]he attorney's fees requested . . . are significantly less tha[n] the amount billed by Plaintiff's Counsel for this case," especially given that the Court finds counsel's rates fair when "considering the 'prevailing market rate for lawyers

11

in the district in which the ruling court sits.'" *Shah v. 786 MS Corp.*, No. 20-CV-4406, 2021 WL 2789277, at *2 (S.D.N.Y. Apr. 23, 2021) (citation omitted); *see also Salami v. B S D Food LLC*, No. 21-CV-2704, 2022 WL 671980, at *7 (S.D.N.Y. Mar. 7, 2022) (citing *Shah*).

Moreover, courts in the Second Circuit routinely award attorney fees in FLSA settlements of as much as one-third of the total recovery. *See Zorn-Hill*, 2020 WL 5578357, at *6 (collecting cases); *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *Ocasio v. Big Apple Sanitation, Inc.*, No. 13-CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), *adopted by* 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016).

Given that Plaintiff's counsel's request for 33% of the total settlement is "in line with common practice in the Second Circuit," the Court finds the request reasonable. *Salami*, 2022 WL 671980, at *7.

### III. Conclusion

For the foregoing reasons, the Parties' request for approval of their Proposed Settlement Agreement is granted. The Clerk of the Court is respectfully requested to terminate the pending motion at Dkt. No. 27.

SO ORDERED.

DATED:     September 20, 2023
           White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE